## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUZETTE MEADE,                     :
        Plaintiff,            :
                       :  **NO. 3:12-cv-651**

      v.                          :
                       :  (JUDGE NEALON)

CAROLYN W. COLVIN,                 :
Acting Commissioner                :
of Social Security,                :
        Defendant             :

**FILED
SCRANTON**

FEB  6 2014

PER _____
         DEPUTY CLERK

### MEMORANDUM

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Suzette Meade's claim for supplemental security income benefits. For the reasons set forth below, the decision of the Commissioner will be affirmed.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. However, there are other eligibility requirements relating to an applicant's financial situation which must be met.

Meade was born on January 8, 1958 and was fifty (50) years old on the application date. (Tr. 20). Meade has a high school education. (Tr. 20). She has no past relevant work and last worked in approximately 1976. (Tr. 20).

On June 16, 2008, Meade filed an application for supplemental security income benefits alleging disability since May 25, 2003 due to mental impairments, though she has not worked

since 1976. (Tr. 90, 117). On September 18, 2008, the Bureau of Disability Determination denied Meade's application. (Tr. 72-75). On October 7, 2008, Meade requested a hearing before an administrative law judge ("ALJ"). (Tr. 76-78). An ALJ hearing was held on November 18, 2009. (Tr. 43-69). On January 14, 2010, the ALJ issued a decision denying Meade's applications. (Tr. 10-25). On March 12, 2010, Meade requested that the Appeals Council review the ALJ's decision. (Tr. 5-9). The Appeals Council, on February 14, 2012, concluded that there was no basis upon which to grant Meade's request for review. (Tr. 1-4). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Meade then filed a complaint in this Court on April 9, 2012. (Doc. 1). Supporting and opposing briefs were submitted and the appeal is now ripe for disposition. (Docs. 16, 18). For the reasons set forth below, the decision of the Commissioner denying Meade's application for supplemental security income benefits will be affirmed.


**Standard of Review**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari,

2

247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial

evidence, we are bound by those findings, even if we would have decided the factual inquiry

differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the

Secretary must be accepted as conclusive by a reviewing court if supported by substantial

evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe v. Shalala, 71 F.3d 1060,

1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but

'rather such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co.

v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d

198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial

evidence has been described as more than a mere scintilla of evidence but less than a

preponderance.  Brown, 845 F.2d at 1213.  In an adequately developed factual record, substantial

evidence may be "something less than the weight of the evidence, and the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative agency's

finding from being supported by substantial evidence."  Consolo v. Federal Maritime

Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record,"

Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from

its weight."  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of

evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails

to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must

3

indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting

certain evidence.  Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court

reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v.

Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir.

1979).


## Sequential Evaluation Process

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.  For purposes of the preceding
> sentence (with respect to any individual), "work which exists in the national
> economy" means work which exists in significant numbers either in the region
> where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability insurance and

supplemental security income claims.  See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920;

Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence,

4

whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four, the administrative law judge must determine the claimant's residual functional capacity. Id. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

The ALJ proceeded through each step of the sequential evaluation process and determined that Meade was not disabled. (Tr. 13-22). At step one, the ALJ found that Meade had not engaged in substantial gainful work activity since June 16, 2008, the application date. (Tr. 15).

At step two, the ALJ found that Meade suffered from the severe impairments of anxiety,

5

panic attacks and agoraphobia. (Tr. 15). The ALJ also determined that Meade's history of a

fractured ankle requiring surgery with hardware placement, and history of numbness in her face

secondary to Bell's Palsy were non-severe impairments.[1] (Tr. 15).

At step three of the sequential evaluation process, the ALJ found that Meade did not have

an impairment or combination of impairments that met or medically equaled a listed impairment.

(Tr. 15-17).

At step four of the sequential evaluation process, the ALJ determined that Meade has the

residual functional capacity to perform a full range of work at all exertional levels, limited to

simple, routine and repetitive tasks; a low stress job with only occasional decision making and

occasional changes in the work setting; and occasional interaction with the public, co-workers

and supervisors. (Tr. 17). The ALJ then found that Meade has no past relevant work. (Tr. 20).

At step five, the ALJ determined that there are a significant number of jobs in the national

economy that Meade could perform. (Tr. 21). At the hearing, the vocational expert testified that

Meade would be capable of performing work as a bench assembler, bench packager, and bench

inspector. (Tr. 21, 66-67). Meade was therefore found to be not disabled under the Act since

June 16, 2008, the date the application was filed. (Tr. 21-22).

In her appeal brief, Meade argues that the ALJ erred by basing her decision on an

incorrect interpretation of the claimant's current psychological condition and residual functional

---

1. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

work capacity, and erred in assessing the testimony of the vocational witness.  (Doc. 16, pgs. 5-12).

Meade argues that the ALJ incorrectly substituted her opinion for the opinions of the physicians.  (Doc. 16, pgs. 5-8).  The ALJ determined that Meade suffered from the severe impairments of anxiety, panic attacks, and agoraphobia.  (Tr. 15).  The ALJ then evaluated Meade's mental impairments pursuant to Listing 12.06, anxiety related disorders, and determined that she did not meet or medically equal the listing requirements.  (Tr. 15-17).

A claimant meets Listing 12.06 when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.  Listing 12.06 provides as follows:

> A. Medically documented findings of at least one of the following:
> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
> a. Motor tension; or
> b. Autonomic hyperactivity; or
> c. Apprehensive expectation; or
> d. Vigilance and scanning;
> or
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
> AND
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

OR
C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.06.

Under the B criteria of Listing 12.06, the ALJ determined that Meade has mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence or pace, and no episodes of decompensation. (Tr. 15-17). Regarding her activities of daily living, the ALJ noted that Meade testified that she is able to administer her own medications every day, she takes care of her own personal needs, and she does household chores such as cooking and cleaning. (Tr. 16, 51). When evaluating Meade's social functioning, the ALJ noted that Meade does not drive, she cannot use public transportation, she has panic attacks when she goes out alone but is fine when she stays at home alone, she likes spending time with her family and she has no problems out in public when she is accompanied by her family members. (Tr. 16, 52-53). Meade also spends time with others and goes to the flea market once per week. (Tr. 129). The ALJ then evaluated Meade's concentration, persistence or pace, and noted that Meade has difficulty concentrating when she has a panic attack, she doesn't like to speak when she has a panic attack because she doesn't make sense. (Tr. 16, 55-57, 130). However, Meade also indicated that she watches TV and movies and does crafts. (Tr. 16, 61, 129). Regarding episodes of decompensation, the ALJ noted that Meade has never been hospitalized due to her psychological symptoms. (Tr. 16, 189).

The ALJ then determined that Meade's impairments did not meet the C criteria of the Listing because she has not demonstrated a complete inability to function independently outside the home. (Tr. 16-17). The ALJ noted that Meade prefers to be in her home and feels more

8

comfortable in her home than out in public, however she is still capable of functioning independently outside of the home. (Tr. 16-17). Meade was working on her independence by taking public transportation and going shopping without a family member, though she had difficulty with these tasks. (Tr. 16-17, 56).

As stated above, the ALJ considered the evidence of record and determined that Meade has the residual functional capacity to perform a full range of work at all exertional levels, with non-exertional limitations. (Tr. 17). The ALJ determined that Meade would be limited to simple, routine and repetitive tasks; a low stress job with only occasional decision making and occasional changes in the work setting; and occasional interaction with the public, co-workers and supervisors. (Tr. 17). In assessing this residual functional capacity, the ALJ thoroughly reviewed the evidence. (Tr. 17-20). Meade began having anxiety eleven (11) years prior to the ALJ hearing, but she could not identify a specific even that triggered her anxiety. (Tr. 18, 58). Meade never received inpatient treatment, but received outpatient treatment at Community Counseling Services of Northeastern Pennsylvania from 1998 to 2000, and again from 2003 through the date of the ALJ hearing. (Tr. 18, 165). Meade takes Paxil regularly and Xanax on an as-needed basis. (Tr. 50-55). At the ALJ hearing, Meade testified that she was doing better and her condition improved, due to her medication and therapy. (Tr. 54-55).

On June 16, 2003, Pareshkumar Solgama, M.D., a psychiatrist, diagnosed Meade with panic disorder with agoraphobia. (Tr. 161, 169). Dr. Solgama assessed a Global Assessment of Functioning ("GAF") score of 54.[2] (Tr. 161, 169). Meade reported irritability, decrease in

---

2. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (2000). A

energy/ motivation (which was improving), depressed mood and social withdrawal. (Tr. 163). She stated that she was experiencing panic attacks three (3) to four (4) times per week, which consisted of shortness of breath and heart palpitations. (Tr. 163). She had not sought out medical attention, though she avoided public situations because they caused the panic attacks. (Tr. 163).

Many treatment notes from Community Counseling Services indicate that Meade reported that she was doing well and was not depressed. (Tr. 179, 183, 185, 187, 200, 202, 204, 208, 213, 217, 219, 227, 229, 233, 239). In January 2001, Meade stated that she was doing well and wanted to stop treatments at Community Counseling Services. (Tr. 212-13).

Joseph Barrett, Ph.D., a state-agency consultant, completed a Psychiatric Review Technique Form on September 17, 2008. (Tr. 248-60). Dr. Barrett evaluated Meade pursuant to Listing 12.06 and determined that she suffered from panic disorder and agoraphobia. (Tr. 253). Pursuant to the B criteria of Listing 12.06, Dr. Barrett determined that Meade had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation. (Tr. 258). Dr. Barrett then determined that the evidence does not establish the presence of the C criteria of Listing 12.06, a complete inability to function independently outside the home. (Tr. 259).

Dr. Barrett also completed a Mental Residual Functional Capacity Assessment form on September 17, 2008. (Tr. 261-63). Dr. Barrett reviewed the medical evidence and noted that the

---

GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id.

treatment notes do not suggest a significant mental status deficit. (Tr. 263). Dr. Barrett noted

that at Meade's last doctor's appointment, she was pleasant, friendly, cooperative, sleeping well,

she did not complain of excessive anxiety, and sometimes thought she no longer needed

treatment. (Tr. 263). At that visit, Meade reported that she performed basic activities of daily

living, though she limited her social activities due to a fear of having a panic attack. (Tr. 263).

Dr. Barrett noted that although Meade does not appear to socialize a lot, there is no evidence that

she is totally housebound or that she cannot socialize at all. (Tr. 260). He stated that Meade

would be capable of performing simple, routine tasks in a setting that does not demand excessive

social interaction. (Tr. 260, 263). Dr. Barrett ultimately determined that Meade's limitations

would not preclude her from performing the basic mental demands of competitive work on a

sustained basis. (Tr. 263).

On June 13, 2008, Meade reported to Dr. Chang, at Community Counseling Services, that

she was doing okay, and she ate and slept well. (Tr. 179). Dr. Chang noted that Meade was

pleasant, friendly and cooperative. (Tr. 179).

On January 23, 2009, Meade had a full affect, she was anxious, had racing thoughts, her

memory was intact, intelligence was average, and insight and judgment were intact. (Tr. 421).

In February 2009, Meade reported no complaints. (Tr. 422). Her affect was bright, mood was

pleasant, thoughts were logical and clear, memory and intelligence were average, and insight and

judgment were fair. (Tr. 422). On April 17, 2009, Meade reported that she was "doing great"

and only wanted to treat at Community Counseling Services every three (3) months. (Tr. 423).

She stated that her anxiety was "ok" and that she does not go out alone. (Tr. 423). Her memory,

intelligence, insight and judgment were intact and appropriate. (Tr. 423). On June 12, 2009,

11

Meade reported that she was doing well, her affect was pleasant, her mood was normal, memory
and intelligence were okay, and insight and judgment were impaired. (Tr. 425). In July 2009,
Meade's affect was fair, her mood was normal, memory and intelligence were intact, and insight
and judgment were fair. (Tr. 424). In September 2009, Meade stated that she was feeling okay,
her affect was full, her mood was pleasant, memory and intelligence were intact/ average, and
insight and judgment were fair. (Tr. 426).

The Court notes that no treating or examining physician has indicated that Meade suffers
from limitations that would preclude her from engaging in the range of work set by the ALJ in
her decision for the requisite statutory twelve (12) month period.[3] Furthermore, the Court cannot
conclude from the medical records that Meade is totally disabled. The ALJ noted that Meade has
no physical limitations that would limit her ability to work, though she has psychological
conditions that would impact the work she can perform. (Tr. 20). Therefore, the ALJ accounted
for Meade's psychological conditions and identified jobs which Meade could perform. The ALJ
determined that Meade could perform a full range of work at all exertional levels, but with non-
exertional limitations. (Tr. 17). No physician indicated that Meade was incapable of working at
that level on a full-time basis. Meade acknowledges that she had a slight improvement in her
panic and anxiety since 2003, though she states that she is unable to go out alone. (Doc. 16, pg.
3) (Tr. 55). However, substantial evidence supports the ALJ's finding that Meade is not totally
precluded from functioning independently outside of the home. Meade reported to her therapist

3. As previously stated, to receive disability benefits, the plaintiff must demonstrate an "inability
to engage in any substantial gainful activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

12

that still went out with someone, she was working on going out more, and it was a goal to go out
alone. (Tr. 192-96).

The ALJ gave great weight to the opinion of Dr. Barrett, the state-agency consultant. (Tr.
20). The ALJ's reliance on that opinion was appropriate. See Chandler v. Commissioner of Soc.
Sec., 667 F.3d 356, 362 (3d Cir. 2011) ("Having found that the [state agency physician's] report
was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported
by substantial evidence[.]").

The ALJ stated that Meade's statements concerning the intensity, persistence and limiting
effects of her symptoms were not credible to the extent that they were inconsistent with the
ability to perform the range of work identified by the ALJ. (Tr. 17-19). There is no basis to
question that credibility judgment. The ALJ was not required to accept Meade's claims
regarding her limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)
(providing that credibility determinations as to a claimant's testimony regarding the claimant's
limitations are for the administrative law judge to make). It is well-established that "an
[administrative law judge's] findings based on the credibility of the applicant are to be accorded
great weight and deference, particularly since [the administrative law judge] is charged with the
duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d
525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799,
801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to
observe and assess the witness credibility."). Because the ALJ observed and heard Meade testify,
the ALJ is the one best suited to assess the credibility of Meade.

Meade next argues that the ALJ failed to properly assess the testimony of the vocational

expert. (Doc. 16, pgs. 8-11). Meade states that the ALJ did not include her psychological conditions in the hypothetical questions. (Doc. 16, pg. 9). Specifically, Meade states that the hypothetical questions did not include Meade's difficulties with separation from her family and friends, her fear of interaction with others, and her inability to go outside alone. (Doc. 16, pg. 9). However, Meade then states that the vocational expert did address these issues and psychological conditions, even though the ALJ did not. (Doc. 16, pg. 9). Meade essentially acknowledges that the vocational expert considered her psychological conditions and fear of being around others and fear of being without her family and friends.

At the hearing, the ALJ asked the vocational expert to consider a hypothetical individual of Meade's same age, education, and experience with no exertional limitations, but would be limited to simple, routine, and repetitive tasks; would be limited to a low stress job, defined as having only occasional decision making and occasional changes in the work setting; and, only occasional interaction with the public, co-workers, and supervisors. (Tr. 66). The vocational expert testified that such an individual would be able to perform work as a bench assembler, bench packager, and bench inspector. (Tr. 66-67).

The ALJ then asked the vocational expert to consider that same hypothetical individual, but with no interaction with the public or co-workers, and that the work should be isolated with only occasional supervision. (Tr. 67). The vocational expert testified that such an individual would not be able do work as a bench assembler, packager, or inspector. (Tr. 67). The vocational expert stated that, generally, an individual would not be able to work without being involved with the public or in contact with individuals. (Tr. 67). This hypothetical question accounted for Meade's psychological difficulties and fear of interaction with others.

14

A hypothetical question must include all of a claimant's impairments which are supported by the record. Ramirez v. Barnhart, 372 F.3d 546, 553-55 (3d Cir. 2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). One which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim. Id. However, "[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

When an ALJ's hypothetical question to a vocational expert sets forth the plaintiff's limitations, as supported by the record, the vocational expert's response may be accepted as substantial evidence in support of the ALJ's determination that the plaintiff is not disabled. See Chrupcala, 829 F.2d at 1276. Therefore, the vocational expert's response, that Meade is capable of performing work as a bench assembler, with 1,200 positions available in the region, 15,000 in the state, and 1 million in the national economy; a bench packager, with 2,500 positions available in the region, 30,000 in the state, and 2 million in the national economy; and a bench inspector, with 1,300 positions available in the region, 16,000 in the state, and 800,000 in the national economy, constitutes substantial evidence in support of the ALJ's determination that Meade was not disabled under the Act. (Tr. 21-22, 66-67).

Based upon the evidence of record and the testimony at the hearing, the ALJ concluded that Meade has the residual functional capacity to perform a full range of work at all exertional levels with non-exertional limitations. (Tr. 17, 21). The ALJ determined that Meade is capable of performing the jobs identified by the vocational expert. (Tr. 21).

After review of the administrative record, it is determined that the decision of the

Commissioner is supported by substantial evidence.  Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be affirmed.  An appropriate order follows.


**Date:** February 6, 2014

_____

**United States District Judge**